## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| VENTURE COMMERCIAL MORTGAGE, LLC, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 09-2285-KHV |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR THE COLUMBIAN BANK AND TRUST COMPANY, et al., | ) ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant LNV Corporation's Motion To Dismiss (Doc. #14) filed August 3, 2009. Plaintiff alleges breach of contract (Count III) and breach of LNV's duty of good faith and fair dealing (Count VI). Plaintiff also seeks damages from LNV under theories of quantum meruit (Count VIII) and unjust enrichment (Count IX). LNV asks the Court to dismiss all such claims.[1] For the reasons stated herein, the Court sustains defendant's motion to dismiss.

## Legal Standards

In ruling on defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded factual allegations and determines

---

[1]    Counts I, II, IV, V and VII allege that Columbian and the FDIC breached a correspondence agreement, breached the VCM Participation Agreement, breached their duty of good faith and fair dealing regarding the Correspondence Agreement and the VCM Participation Agreement and breached their fiduciary duties. Counts VIII, IX and X also seek recovery from Columbian and the FDIC under theories of quantum meruit, unjust enrichment and constructive trust. Because these counts do not involve this motion, the Court does not address them here.

whether they plausibly give rise to an entitlement of relief. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible and not merely conceivable on its face. <u>Id.</u>; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. <u>Iqbal</u>, 129 S. Ct. at 1950.

The Court need not accept as true those allegations which state only legal conclusions. <u>See id.</u>; <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden to frame its complaint with enough factual matter to suggest that it is entitled to relief; it is not enough for it to make threadbare recitals of a cause of action accompanied by mere conclusory statements. <u>Twombly</u>, 550 U.S. at 556. Plaintiff makes a facially plausible claim when it pleads factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged. <u>Iqbal</u>, 129 S. Ct. at 1949. Plaintiff must show more than a sheer possibility that a defendant has acted unlawfully, it is not enough to plead facts that are "merely consistent" with liability. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. <u>Iqbal</u>, 129 S. Ct. at 1949. Similarly, where the well pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged but not "shown" that the pleader is entitled to relief. <u>Id.</u> at 1950.

## Factual Background

The relevant facts are drawn from plaintiff's complaint and documents discussed in the complaint but not attached thereto. <u>See</u> <u>Tradesmen Int'l, Inc. v. U.S. Postal Serv.</u>, 234 F. Supp.2d 1191, 1203 n. 5 (D. Kan. 2002) (when considering a motion to dismiss, court may consider

documents discussed in complaint). The Court views the facts in the light most favorable to plaintiff.

On June 15, 2007, Venture Commercial Mortgage, LLC and The Columbian Bank & Trust Company entered into a Correspondence Agreement. <u>See</u> <u>Complaint</u> (Doc. #1) at 8. Under the agreement, Venture and Columbian agreed that Venture, as broker, would submit potential mortgage loans for Columbian to consider. <u>Id.</u> For its services, Venture would earn loan placement fees and extension fees. Columbian failed to pay certain loan placement fees and extension fees which Venture earned under the Correspondence Agreement, including $224,657.00 in extension fees. <u>Id.</u> at 15.

At unspecified times, Columbian met and conferred with clients that Venture obtained under the Correspondence Agreement. <u>Id.</u> These contacts were without Venture's knowledge or consent. During the life of the Correspondence Agreement, from June 15, 2007 until Columbian failed in August of 2008, Venture provided quarterly status reports to Columbian at a total cost of $20,000.00. <u>Id.</u> at 23. Venture also spent an undisclosed sum to introduce Hasz Fund Control to Columbian, which initiated a business relationship with Hasz. In 2007, at Columbian's request, Venture spent $10,000.00 and hired CB Richard Ellis to conduct a market study of downtown Phoenix, Arizona. <u>Id.</u>

On September 21, 2007, Venture and Columbian entered into an Amended and Restated Warehousing Credit and Security Agreement (the "VCM Loan Agreement"). <u>Id.</u> at 10. Under the VCM Loan Agreement, Columbian agreed to set up a $2,000,000.00 line of credit for Venture to make commercial mortgage loans. <u>Id.</u> at 7. Specifically, the VCM Loan Agreement provided that Columbian extended the line of credit to permit Venture "to make commercial loans" and that

"[a]dvances shall be used by [Venture] solely for the purpose of originating Eligible Loans." Id. In conjunction with the VCM Loan Agreement, Venture executed a promissory note (the "VCM Note") to evidence the debt. Id. at 10. As security for payment of the VCM Note, Venture granted Columbian a security interest in, inter alia, the following collateral:

> 4.1.1 All Mortgage Loans, including all Mortgage Notes and Mortgages evidencing or securing such Mortgage Loans, which from time to time are delivered or caused to be delivered to Lender [Columbian] under this Agreement (the "Pledged Mortgages").

See Loan Agreement attached as Ex. A to Memorandum In Support Of Defendant LNV Corporation's Motion To Dismiss (Doc. #15) at 8-10. The VCM Loan Agreement also provided that pledged mortgages and other collateral would be released from the security interest only when Venture paid a "release amount" to Columbian. Id. at 10.

The Loan Agreement required Venture to pay an annual commitment fee. In that regard, Section 3.5 stated that on each anniversary date of the original agreement, Venture would pay Columbian a commitment fee equal to one per cent of the commitment amount then available to Venture. See id. at 7. Under the VCM Loan Agreement, to initiate an advance, Venture was required to give Columbian a written request no later than five days before it wished to obtain the funds. See id. at 5. Shortly before it failed in July of 2008, Columbian refused Venture's payment of the annual commitment fee.

Venture could not assign the VCM Note or the VCM Loan Agreement, but Columbian had unlimited rights to transfer the VCM Note and Loan Agreement. Specifically, the VCM Loan Agreement stated as follows:

> This Agreement may not be assigned by Borrower. This Agreement and the Note, along with Lender's security interest in any or all of the Collateral, may, at any time, be transferred or assigned, in whole or in part, by Lender, and any assignee thereof

may enforce.

See id. at 25.  In the event of default by Venture, the VCM Loan Agreement gave Columbian the right to foreclose upon or otherwise enforce its security interest in the collateral and to recover all advances, charges, costs and expenses, including reasonable attorneys' fees and disbursements.  Id. at 10, 20-21.

On October 21, 2007, Venture and Columbian entered into a Non-Recourse Loan Participation Agreement (the "VCM Participation Agreement").  Under that agreement, Venture paid Columbian $400,000.00 for a 5.13 per cent interest in a $7.8 million loan from Columbian to Colter Medical Office Condominium, LLC ("Colter") to finance a medical office facility in Phoenix. As security for its $400,000.00 interest in the Colter loan, Venture received a first priority lien on the Colter property.  The VCM Participation Agreement provided that Columbian would account for and promptly remit to Venture its share of all collections from Colter. See Non-Recourse Loan Participation Agreement, attached as Ex. F to Response To Defendant LNV Corporation's Motion To Dismiss (Doc. #18) at 1.  To finance its investment in the Colter loan, Venture borrowed $400,000.00 from Columbian under the VCM Note and VCM Loan Agreement.

On March 6, 2008 Columbian classified the VCM Note as substandard.  Venture alleges that at that time, the VCM Note was current and performing in all respects.

Colter defaulted on its loan in April of 2008 and the property was sold at a trustee's sale on August 5, 2008.[2]  Columbian purchased the Colter property by way of a credit bid in the amount of

---

[2]        The parties do not discuss whether this was a foreclosure proceeding and do not list the name of the trustee.

$8,479,049.22.[3] Columbian did not allow Venture to bid on the Colter Property and did not account to Venture for its $400,000 lien on the Colter Property.

On August 18, 2008, Columbian sent a letter which purported to terminate all relationships between it and Venture. On August 22, 2008, the Kansas Office of the State Bank Commissioner closed Columbian and the Federal Deposit Insurance Company ("FDIC") took over operations as receiver. On August 26, 2008, Venture offered to release its participation in the Colter loan and settle its outstanding balance on the VCM Note. The FDIC refused Venture's offer and on November 21, 2008, Venture filed two claims with the FDIC seeking to recover its $400,000.00 interest in the Colter loan.

On December 16, 2008, the FDIC sold the VCM Note and VCM Loan Agreement (but not the collateral which secured those agreements) to LNV Corporation at a 40 per cent discount. At sale, the FDIC listed the VCM Note as "Performing Commercial Real Estate" even though it had previously classified the loan as substandard. Venture alleges that the VCM Note was current at this time. In Section 2.1 of the Loan Sale Agreement, "Terms and Conditions of Sale," LNV agreed to assume all obligations of Columbian and the FDIC with respect to the notes and collateral documents. See Loan Sale Agreement attached as Ex. A to Response To Defendant LNV Corporation's Motion To Dismiss (Doc. #18) at 1. The Loan Sale Agreement defined "obligations" as all obligations and commitments of Columbian and the FDIC related to the VCM Note and VCM Loan Agreement and arising under and in accordance with the relevant notes or collateral

---

[3] A "credit bid" sale occurs when a secured creditor bids the entire amount of its claim at a sale of the debtor's collateral, and if successful, offsets its claim against the purchase price of the property. In re AG-Gressor Mfg., Inc., No. 99-80113, 2000 WL 33950750, at *2 (Bankr. C. D. Ill. 2000). Venture alleges that Columbian's credit bid of $8,479,049.22 exceeded its secured claim in the property, thereby inflating the property's fair market value.

documents. Id. at 6.  It defined "loan" as "any obligation evidenced by a Note or other evidence of indebtedness." Id. at 5.

On April 3, 2009, the FDIC disallowed Venture's claims for reimbursement of its $400,000.00 interest in the Colter loan.  The FDIC stated that the disallowed claim had been partially paid in the amount of $161,657.00, and gave Venture $63,000.00 in receiver's certificates.[4]

On April 16, 2009, LNV demanded that Venture make full payment of the VCM Note ($1,300,000.00) and pay accrued interest at the non-default rate ($85,556.25), late charges ($1,073.86), interest at the default rate ($532.63 per day from and after April 30, 2009), attorneys' and other fees, costs and expenses.  Venture apparently responded on June 2, 2009, by filing this suit against the FDIC, Columbian and LNV.  See Complaint (Doc. #1).[5]

In Count III, Venture alleges that Columbian, the FDIC and LNV breached the VCM Note and VCM Loan Agreement when (1) on March 6, 2008, Columbian unilaterally and without notice classified the VCM Note as substandard, even though it was current and performing; (2) in July of 2008, Columbian refused to accept Venture's one per cent annual extension fee ($20,000.00) and deprived Venture of $700,000.00 remaining under the line of credit; (3) on December 16, 2008, the FDIC separated the collateral for the VCM Note (the mortgages which Venture had made) from the VCM Note itself and sold the VCM Note to LNV at a 40 per cent discount even though it was

---

[4]     An FDIC receiver's certificate entitles the recipient to share proportionately in any funds recovered through the disposal of the assets of the failed bank, meaning that the recipient may eventually recover some of the uninsured funds.  See FDIC Web Site, http://www.fdic.gov.

[5]     Three weeks later, on June 22, 2009, LNV filed suit against Venture in the United States District Court for the District of Arizona.  See Complaint (Doc. #1) filed in LNV v. Venture Commercial Mortgage, LLC, No. 09-CV-1334 (D. Ariz. 2009). In that action, LNV alleges that Venture and its guarantors breached the note and guarantees by failing to pay the amounts due under the VCM Note and VCM Loan Agreement.  Id. at 2.

current and performing; (4) on December 16, 2008, the FDIC sold the VCM Note to LNV and listed the Note as "Performing Commercial Real Estate" even though it had previously classified the loan as substandard; (5) on April 3, 2009, the FDIC refused to account for Venture's $400,000.00 interest in the Colter loan; (6) on August 5, 2008, the FDIC refused to let Venture bid on the Colter property; and (7) on April 16, 2009, LNV wrongfully demanded payment in full under the VCM Note, plus interest at the default and non-default rate, late charges, plus attorneys' fees and other fees, costs and expenses.

In Count VI, Venture alleges that Columbian, the FDIC and LNV breached their duty of good faith and fair dealing with respect to the VCM Note. Specifically, Venture alleges that the breaches alleged in Count III also constitute breaches of the duty of good faith and fair dealing.

In Counts VIII and IX, Venture seeks reimbursement from Columbian, the FDIC and LNV under a theories of quantum meruit and unjust enrichment. Specifically, Venture alleges that it conferred a benefit upon Columbian by generating new mortgage loans, and that under the Correspondence Agreement, it is entitled to $224,657.00 in unpaid placement and extension fees. Venture also alleges that Columbian did not reimburse it for $20,000.00 in quarterly loan status reports, that it conferred a benefit upon Columbian by introducing it to Hasz Fund Control; and that at Columbian's request, it paid $10,000.00 for a market study of downtown Phoenix. Venture also alleges that it lost use of the line of credit under the VCM Note and lost its $400,000.00 investment in the Colter loan, plus interest owed on the claim amount, costs and attorneys' fees.

## Analysis

LNV seeks to dismiss Count III because as a matter of law, (1) Venture defaulted on the

VCM Note and because of that prior default cannot recover for breach of contract; (2) Venture does not allege breaches of the VCM Note or the VCM Loan Agreement by Columbian and LNV; (3) it has no liability under the VCM Note or the VCM Loan Agreement; (4) the VCM Note and the VCM Loan Agreement are not related to the Colter loan and it did not purchase or assume any liability for the Colter Loan; and (5) plaintiff has not alleged damages as a result of the alleged breaches. LNV seeks to dismiss Count VI because as a matter of law, defendants did not breach a duty of good faith and fair dealing. LNV argues that Counts VIII and IX are deficient because Venture has not alleged facts from which the Court could conclude that it was unjustly enriched at Venture's expense. Venture asks the Court to deny LNV's motion to dismiss or in the alternative to grant leave to amend to address any deficiencies in its complaint.   Venture's request for leave to amend does not comply with D. Kan. Rule 15.1, which requires that a motion for leave to amend attach the proposed pleading and "set forth a concise statement of the amendment." D. Kan. Rule 15.1. The Court therefore overrules Venture's motion for leave to amend.

**A.    Choice of Law**

Where the parties to a contract have entered into an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement. See Befort v. Kansas, No. 08-2598-KHV, 2009 WL 1379377, at *3 (D. Kan. May 18, 2009) (citing Brenner v. Oppenheimer & Co. Inc., 273 Kan. 525, 539, 44 P.3d 364 (2002)); see also Joseph Stowers Painting, Inc. v. A. Zahner Co., No. 99-2391-KHV, 2000 WL 210219, at * (D. Kan. Feb. 4, 2000).   Here, the VCM Note and VCM Loan Agreement provide that they are governed by

Arizona law.[6]  In light of the parties' agreement, the Court will apply Arizona law.

**B.      Count III – Breach of Contract**

In Count III, Venture alleges that Columbian and the FDIC breached the VCM Note and the VCM Loan Agreement and that as assignee of those agreements, LNV is liable for their breaches.

As a threshold issue, LNV argues that Venture defaulted on the VCM Note and that its prior default prevents it from bringing a breach of contract claim on the VCM Note or VCM Loan Agreement.  A defendant who is sued for breach of contract should be excused from liability if plaintiff has previously failed to perform the contract in a material particular.  See QC Const. Products, LLC v. Cohill's Bldg. Specialties, Inc. 423 F. Supp.2d 1008, 1013 (D. Ariz. 2006) (citing O'Day v. McDonnell Douglas Helicopter Co., 191 Ariz. 535, 959 P.2d 792, 795 (1998)); see also Johnson v. American Nat. Ins. Co.,126 Ariz. 219, 226, 613 P.2d 1275, 1282 (Ariz. App. 1980) (lender has legal right to insist on strict compliance with agreed terms).  As to breaches which occurred after a prior default by Venture, LNV is correct and the Court therefore dismisses Venture's claims that LNV is liable for the FDIC's refusal to account for Venture's interest in the Colter loan on April 3, 2009 and LNV's demand for payment on April 16, 2009.  Count III alleges, however, that the loan was current and performing in all respects when the FDIC sold the VCM Note and VCM Loan Agreement on December 16, 2008.  The Court must assume that this allegation is true.  Therefore, Venture's later default on VCM Note does not excuse breaches that allegedly

---

[6]      The Loan Agreement provides that "this Agreement and the other Loan Documents shall be governed by the laws of the State of Arizona, without reference to its principles of conflicts of laws."  See Loan Agreement attached as Ex. A to Memorandum In Support Of Defendant LNV Corporation's Motion To Dismiss (Doc. #15) at 25.  The VCM Note includes a virtually identical provision.  See VCM Note attached as Ex. B to Memorandum In Support Of Defendant LNV Corporation's Motion To Dismiss (Doc. #15) at 3.

occurred on or before December 16, 2008, i.e. Venture's claims that (1) on March 6, 2008, Columbian unilaterally and without notice classified the VCM Note as substandard, even though it was current and performing; (2) in July of 2008, Columbian refused to accept Venture's one per cent annual extension fee ($20,000.00) and deprived Venture of $700,000.00 remaining under the line of credit; (3) on December 16, 2008, the FDIC separated the collateral for the VCM Note (the mortgages which Venture had made) from the VCM Note itself and sold the VCM Note to LNV at a 40 per cent discount even though it was current and performing; (4) on December 16, 2008, the FDIC sold the VCM Note to LNV and listed the Note as "Performing Commercial Real Estate" even though it had previously classified the loan as substandard; and (5) on August 5, 2008, the FDIC refused to let Venture bid on the Colter property. The Court therefore addresses the merits of those claims.

In a breach of contract action, plaintiff has the burden of proving (1) the existence of a contract, (2) breach of the contract and (3) resulting damages. Chartone, Inc. v. Bernini, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Ariz. App. 2004).

### 1.    Columbian's Loan Re-Classification Of The VCM Note On March 6, 2008

As noted, Venture alleges that Columbian breached the VCM Note and the VCM Loan Agreement when it classified the VCM Note as substandard and that LNV is liable for its breach. LNV seeks to dismiss this portion of Count III because neither the VCM Note nor the VCM Loan Agreement contained any provisions regarding loan classification and Columbian was not even responsible for classifying the loan.   LNV further argues that as a matter of law, the FDIC is not liable for loan classifications.

Generally, the FDIC and other agencies, not private banks, are responsible for loan

classifications.  See e.g., de la Fuente v. F.D.I.C., 332 F.3d 1208, 1224 (9th Cir. 2003).  Nothing in the VCM Note or the VCM Loan Agreement addressed the issue of loan classification or provided that re-classifications could constitute a breach of the agreement.  Therefore, as a matter of law, a re-classification did not constitute a breach of the VCM Note or the VCM Loan Agreement and LNV's motion on this point is well taken.

2.        Refusal Of Extension Fee In July Of 2008

Count III alleges that Columbian breached the VCM Note and the VCM Loan Agreement when it refused a one per cent annual extension fee and deprived Venture of $700,000.00 under the line of credit, and that LNV is liable for its breach.  LNV seeks to dismiss this portion of Count III because Columbian had no obligation to accept the fee and Venture has not alleged that it requested any funds which Columbian denied.

As noted, Section 3.5 of the Loan Agreement provided that on each anniversary date of the VCM Loan Agreement, Venture would pay Columbian a commitment fee equal to one per cent of the commitment amount then available to Venture.  See Loan Agreement attached as Ex. A to Memorandum In Support Of Defendant LNV Corporation's Motion To Dismiss (Doc. #15) at 7. As to advances, the Loan Agreement provided as follows:

> Requests for Advances shall be initiated by Borrower by delivering to Lender, no later than five (5) Business Days prior to any Business Day that Borrower desires to borrow hereunder, a completed and signed request for an Advance (an "Advance Request") on the then current form approved by Lender.

See id. at 5.  The VCM Note and the VCM Loan Agreement did not require Columbian to make advances without an advance request from Venture.  Venture does not allege that Columbian denied any advance requests.  Furthermore, the Loan Agreement did not expressly require Columbian to accept the commitment fee and Venture has not alleged a colorable claim that it suffered damages

-12-

because it refused to do so. Therefore, even if Columbian refused the commitment fee, such action did not constitute a breach of the VCM Note or the VCM Loan Agreement for which LNV is liable.

> 3. FDIC's Separation Of The VCM Note And Collateral And Sale Of The VCM Note At Discount On December 16, 2008

Count III alleges that the FDIC breached the VCM Note by separating it from the collateral which secured it and by selling it at a 40 per cent discount. LNV seeks to dismiss this portion of Count III because the Loan Agreement expressly permitted the lender to transfer the VCM Note and the VCM Loan Agreement. As noted, concerning assignment, the VCM Loan Agreement stated as follows:

> This Agreement may not be assigned by Borrower. This Agreement and the Note, along with Lender's security interest in any or all of the Collateral, may, at any time, be transferred or assigned, in whole or in part, by Lender, and any assignee thereof may enforce.

See Loan Agreement attached as Ex. A to Memorandum In Support Of Defendant LNV Corporation's Motion To Dismiss (Doc. #15) at 25. The Loan Agreement did not restrict the lender's sale of the agreement, the note or any of the collateral. Furthermore, the sale of defaulted loans at a discount price is a customary business practice, recognized by the courts. See e.g., Land Holdings (St.Thomas) Ltd. v. Mega Holdings, Inc., 283 F.3d 616, 620 (3d Cir. 2002); In re DVI, Inc., 306 B.R. 496, 505 (Bankr. D. Del. 2004). The Loan Agreement also did not restrict the lender from selling the collateral for the note separate from the note itself. Venture alleges no colorable respect in which it suffered damage on account of the alleged discount sale or on account of the sale of the collateral separate from the VCM Note. Therefore, as a matter of law, the Court finds that even if the FDIC assigned the VCM Note and VCM Loan to LNV at a discount and separate from the collateral which secured the VCM Note, such action did not constitute an actionable breach of

the VCM Note or the VCM Loan Agreement.

     4.     FDIC's Re-Classification Of The VCM Note On December 12, 2008

Venture alleges that the FDIC breached the VCM Note and VCM Loan Agreement when it sold the VCM Note to LNV and listed the Note as "Performing Commercial Real Estate" even though it had previously classified the loan as substandard, and that LNV is liable for its breach. As stated above, as a matter of law, the alleged re-classification did not constitute a breach of the VCM Note or the VCM Loan Agreement.

     5.     FDIC's Refusal To Account For Venture's Interest In the Colter Loan on April 3, 2009

LNV seeks to dismiss this claim because when it purchased the VCM Note and VCM Loan Agreement it did not purchase the Colter loan or assume any liability for it.[7]  Venture argues that LNV assumed liability arising out of the administration of the Colter loan and the foreclosure of the Colter property because Venture used proceeds of its line of credit to purchase a participation interest in the Colter loan and because the Colter property also secured the VCM Note and VCM Loan Agreement.  See Response To Defendant LNV Corporation's Motion To Dismiss (Doc. #18) filed August 26, 2009 at 18-19.  The complaint does not articulate this theory of liability and for this reason alone, LNV's motion to dismiss is well taken.

LNV's motion is also well taken on the merits.  The purchaser of an asset from a failed institution is not liable for the conduct of the receiver or failed institution unless the liability is transferred and assumed.  Nashville Lodging, Inc. v. RTC, 839 F. Supp. 58, 62 (D.D.C. 1993)

---

     [7]     In Count II, Venture alleges that Columbian and the FDIC breached the VCM Participation Agreement.  Venture does not allege that LNV breached the VCM Participation Agreement.

(citing First Ind. Fed. Sav. Bank v. FDIC, 964 F.2d 503, 508 (5th Cir. 1992)); Trigo v. FDIC, 847 F.2d 1499 (11th Cir.1988)).  Here, the Loan Sale Agreement between the FDIC and LNV provided that LNV agreed to accept and assume all duties of Columbian and the FDIC "under the Agreements to Pay, Collateral Documents, the Real Estate Interests and the Miscellaneous Agreements related to the Assets."  See Loan Sale Agreement, attached as Ex. 2 to plaintiff's Response To Defendant LNV Corporation's Motion To Dismiss (Doc. #18) at D-2.  LNV therefore accepted the VCM Note and VCM Loan Agreement subject to any liabilities of Columbian and the FDIC under those agreements – but not with respect to the Colter loan.

The VCM Loan Agreement recites that Columbian extended the line of credit to permit Venture "to make commercial loans" and that "[a]dvances shall be used by [Venture] solely for the purpose of originating Eligible Loans."  Nothing in the VCM Loan Agreement purports to permit Venture to use advances under the line of credit to participate in loans originated by Columbian.  Furthermore, the collateral for the Colter loan did not serve as collateral for the VCM Note.  Under the VCM Loan Agreement, the definition of collateral included all "Mortgage Loans, including all Mortgage Notes and Mortgages evidencing or securing such Mortgage Loans, which from time to time are delivered or caused to be delivered to Lender under this Agreement."  See Loan Agreement attached as Ex. A to Memorandum In Support Of Defendant LNV Corporation's Motion To Dismiss (Doc. #15) at 8-10.  Mortgage Loan was defined to mean "any loan made by [Venture] to a third party that is evidenced by a Mortgage Note and secured by a Mortgage."  Id.  Venture's interest in the Colter loan did not become part of the collateral for the VCM Note and VCM Loan Agreement for which LNV later assumed liability.  Therefore, as a matter of law, the Court finds that the alleged breaches of the Colter loan and the VCM Participation Agreement were not

concurrent breaches of the VCM Note and VCM Loan Agreement for which LNV is liable.

      6.    <u>FDIC's Refusal To Allow Venture to Bid On The Colter Property On August 5, 2008</u>

As stated above, Venture's interest in the Colter loan did not become part of the collateral for the VCM Note and VCM Loan Agreement for which LNV later assumed liability. Therefore, as a matter of law, the Court finds that the FDIC's refusal to allow Venture to bid on the Colter Property on August 5, 2008, was not a breach of the VCM Note and VCM Loan Agreement for which LNV is liable.

      7.    <u>LNV's Demand For Payment</u>

Count III alleges that LNV breached the VCM Note and VCM Loan Agreement when it wrongfully demanded payment in full, plus interest at the default and non-default rate, late charges, plus attorneys' fees and other fees, costs and expenses. LNV seeks to dismiss this claim because Venture defaulted on the VCM Note and it was therefore entitled to demand payment in full. LNV further argues that Venture has failed to allege damages from this alleged breach.

Upon default by Venture, the VCM Loan Agreement specifically granted Columbian the right to foreclose the loan and demand payment, including interest, costs and attorneys' fees associated with exercising its rights under the agreement. The Loan Sale Agreement transferred these rights to LNV. On default, LNV had the right to demand payment in full, including all expenses related to enforcing the loan agreement. Venture alleges that the VCM Note was current when the FDIC sold it to LNV in December of 2008, but it does not allege that the VCM Note was current when LNV demanded full payment on April 16, 2009. To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible and not merely conceivable on its face. <u>Iqbal</u>, 129 S. Ct. at 1950; <u>Twombly</u>, 550 U.S. at 555. Courts should look

to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). By alleging that the VCM Note was current in December of 2008 but not alleging that the VCM Note was current in April of 2009, Venture has not alleged or provided sufficient factual matter that it was not in default when LNV demanded payment.[8] Therefore, as a matter of law, the Court dismisses Venture's claim that LNV breached the VCM Note and VCM Loan Agreement by invoking its legal remedies upon default.

**C.    Count VI – Breach of the Duty of Good Faith and Fair Dealing**

Count VI alleges that the VCM Note carried a duty of good faith and fair dealing and that Columbian, the FDIC and LNV breached this duty. Specifically, Venture alleges that the acts alleged in Count III constitute breaches of the duty of good faith and fair dealing.

In Arizona, the law implies a covenant of good faith and fair dealing in every contract. Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund, 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002). Such implied terms are as much a part of a contract as its express terms. Id. By denying the other party the reasonably expected benefits of the agreement, a party may breach the implied covenant of good faith and fair dealing even without breaching an express provision of the contract. Nolan v. Starlight Pines Homeowners Ass'n, 216 Ariz. 482, 488, 167 P.3d 1277, 1283 (Ariz. App. Div. 2007).

The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent the other party to the contract from receiving the benefits and entitlements of the

---

[8]    The Court takes judicial notice that Venture is currently litigating its alleged default under these agreements in the United States District Court for the District of Arizona. See LNV Corp. v. Venture Commercial Mortgage, No. 09-1334-SRB (D. Ariz. 2009).

agreement.  Id.  The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.  Rawlings v. Apodaca, 151 Ariz. 149, 153, 726 P.2d 565, 569 (Ariz. 1986).  A complete catalogue of all forms of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.  Beninger v. Calvin, No. 07-0393, 2008 WL 4368204, at *7 (Ariz. App. Sept. 23, 2008) (citing Restatement (Second) of Contracts § 205 (1981)).  Further, the good faith performance doctrine permits the exercise of discretion for any purpose – including ordinary business purposes – reasonably within the contemplation of the parties.  Southwest Sav. & Loan Ass'n v. SunAmp Sys., 172 Ariz. 553, 559, 838 P.2d 1314, 1320 (Ariz. Ct. App. 1992).  A contract thus would be breached by a failure to perform in good faith if a party uses its discretion for a reason outside the contemplated range – a reason beyond the risks assumed by the party claiming a breach.  Id.  The question then, is whether a jury might reasonably find that defendants wrongfully exercised their rights under the contract for a reason beyond the risks that Venture assumed in the VCM Note and VCM Loan Agreement, or for a reason inconsistent with Venture's "justified expectations."  Id.

LNV argues that Venture has not stated facts consistent with liability because it has not alleged any breach of the express terms of the VCM Note or the VCM Loan Agreement and has not alleged that Columbian or the FDIC took any actions with respect to those agreements for any purposes other than ordinary business purposes as described in Southwest Sav. & Loan.

As discussed above, Venture does not sufficiently allege that Columbian and the FDIC

-18-

breached any express terms of the VCM Note or VCM Loan Agreement. Furthermore, Venture has not alleged facts from which a reasonable jury could find that LNV or its predecessors wrongfully exercised their rights under the contracts or for a reason inconsistent with Venture's justified expectations. Reclassification of loans and the sale of loans at a discount is an accepted business practice, and Venture has failed to allege how a reasonable jury could find that Columbian or the FDIC wrongfully exercised their rights under the contract by performing an accepted business practice that the VCM Note and VCM Loan Agreement expressly permitted. The same can be said about Columbian's refusal to accept Venture's payment of the extension fee. Venture has not alleged that it suffered any damage when Columbian refused the extension fee. Concerning LNV's demand for full payment under the VCM Note in April of 2009, Venture has not alleged that it did not default on the VCM Note and has not alleged that LNV's demand for payment under the express terms of the Loans Sale Agreement was outside of Venture's justified expectations. Venture has not cited any cases, and the Court is aware of none, where a party in default successfully alleged that a creditor breached the duty of good faith and fair dealing merely by exercising its contract rights. Therefore, the Court sustains LNV's motion to the extent that it seeks dismissal of Venture's claims for breach of the duty of good faith and fair dealing under the VCM Note and VCM Loan Agreement.

Venture's remaining claims under Count VI are that LNV is liable for breaches of the duty of good faith and fair dealing under the Colter Loan and VCM Participation Agreement by Columbian and the FDIC. Specifically, Venture argues that the FDIC has not reimbursed Venture for its $400,000.00 interest in the Colter Loan and has refused to allow Venture to bid on the Colter property.

As stated above, the purchaser of an asset from a failed institution is not liable for the conduct of the receiver or failed institution unless the liability is transferred and assumed. Nashville Lodging, Inc., 839 F. Supp. at 62, see also Kennedy v. Mainland Sav. Ass'n, 41 F.3d 986, 990 (5th Cir. 1994) (purchaser of asset from FDIC was not liable under a separate agreement between plaintiff and failed bank). LNV made no express assumption of liability for the Colter Loan when it purchased the VCM Note and the VCM Loan Agreement. Furthermore, the VCM Participation Agreement was not part of the collateral which secured the VCM Note and Loan Agreement. Therefore Venture has not alleged facts that LNV is liabile for the FDIC's breach of any duty of good faith and fair dealing under the Colter Loan and has not alleged facts that it had a justified expectation that LNV, who is not a party to the Colter Loan, assumed any liability for repayment of Venture's $400,000.00 interest in the Colter loan.

### E.     Counts VIII and IX – Quantum Meruit and Unjust Enrichment

In Counts VIII and IX, Venture argues that it can recover under a theory of quantum meruit against LNV, Columbian and the FDIC because defendants have retained benefits at Venture's expense. See Complaint (Doc. #1) at 24. Specifically, Venture alleges that under the terms of the Correspondence Agreement, it earned $224,657.00 in fees that Columbian never paid. Venture also alleges that under the Correspondence Agreement, it incurred costs of at least $30,000.00 when it provided Columbian with quarterly status reports ($20,000.00), paid for a market study of downtown Phoenix ($10,000.00) and when initiated a business relationship between Columbian and Hasz Fund Control. Venture further alleges that when it referred potential borrowers to Columbian under the Correspondence Agreement, it conferred a benefit upon Columbian that was not reimbursed because Venture was later denied access to $700,000.00 under the VCM Note.

Quantum meruit is the measure of damages imposed when a party prevails on the equitable claim of unjust enrichment. Landi v. Arkules, 172 Ariz. 126, 135, 835 P.2d 458, 467 (Ariz. App. 1992). To recover such damages, the party must prove that (1) the other party was unjustly enriched at the expense of the claimant, (2) the claimant rendered services that benefitted the other party, and (3) the claimant conferred this benefit under circumstances that would render inequitable the other party's retention of the benefit without payment. Id. Quantum meruit damages are available when services are performed under an unenforceable contract or when they are rendered in the absence of a contract. Western Corrections Group, Inc. v. Tierney, 208 Ariz. 583, 590, 96 P.3d 1070, 1077 (Ariz. App. Div. 2004) (citing Blue Ridge Sewer Improvement Dist. v. Lowry and Assocs., Inc., 149 Ariz. 373, 375, 718 P.2d 1026, 1028 (Ariz. App. 1986).

Venture does not allege that it rendered any service or benefit to LNV or that LNV has retained any benefit from Venture that would give rise to a claim for unjust enrichment. All of the benefits that Venture alleges it conferred upon Columbian arose out of the Correspondence Agreement, a contract to which LNV was not a party, for which it assumed no liability and as to which it has received no benefits. Therefore, as a matter of law, the Court finds that Venture has failed to state facts that it is entitled to recover damages from LNV under a theory of unjust enrichment. Counts VIII and IX are dismissed as to LNV.

**IT IS THEREFORE ORDERED** that Defendant LNV Corporation's Motion To Dismiss (Doc. #14) filed August 3, 2009 be and hereby is **SUSTAINED**. All claims against LNV are hereby dismissed.

Dated this 5th day of March, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL

-21-

United States District Judge